IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

BRIAN ISON and
CHRIS HAMILTON, Individually
and for others Similarly Situated,

              Plaintiffs,

v.                                                  CIVIL ACTION NO.  3:21-0333

MARKWEST ENERGY PARTNERS, LP,

              Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiffs Brian Ison and Chris Hamilton's Motion for Conditional Certification and Court-Authorized Notice. ECF No. 20. Defendant MarkWest Energy Partner, LP (hereinafter MarkWest) opposes the motion and has filed a Motion for Oral Argument. ECF No. 31. Upon review and for the following reasons, the Court **GRANTS** Plaintiffs' motion and **DENIES AS MOOT** Defendant's motion.

MarkWest is a company "engaged in the gathering, processing, and transportation of natural gas." *Compl.* at ¶35. Plaintiffs state they are non-salaried inspectors who "worked for MarkWest" and primarily "inspect[] and handl[e] material supplies for pipeline equipment installs and maintenance." *Id*. at ¶¶3, 42. Plaintiffs allege they "typically work at least 12 hours a day, for as many as 6 days a week, for weeks at a time." *Id*. at ¶57. However, Plaintiffs claim that they "do not receive overtime for hours worked in excess of 40 in any of those weeks." *Id*. at ¶70. Instead, Plaintiffs allege they are paid a "flat daily rate for each day worked," which they assert violates the

Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and Ohio law.[1] *Id.* at ¶¶18, 86. Therefore, on June 10, 2021, Plaintiffs filed this putative class action against MarkWest seeking to recover unpaid wages and other damages, and they now seek to conditionally certify two classes of inspectors:

> All inspectors employed by, or working on behalf of MarkWest, who received a day rate with no overtime at any time during the past 3 years (FLSA Class Members) [; and]

> All inspectors employed by, or working on behalf of MarkWest in Ohio, who received a day rate with no overtime at any time during the past 3 years (Ohio Class Members).

*Id.* at ¶¶23, 25.

In response to Plaintiffs' motion for conditional certification, MarkWest states it simply is the wrong defendant. MarkWest asserts it does not employ any of these inspectors and it has never paid them. Rather, it contracts with at least twenty to thirty different inspection service companies, and these inspection service companies provide it inspectors with a variety of skill sets and backgrounds to satisfy MarkWest's specific inspection needs. MarkWest contends it does not dictate how the inspectors are paid or classified. Instead, those responsibilities rest entirely with the inspection service companies.

In support of its position, MarkWest attached the declaration of Michael Fischer, who is its Supply Chain Manager. *Decl. of Michael Fischer*, ECF No. 26-1. In his declaration, Mr. Fischer states that MarkWest contracts with a variety of inspection service companies for various

---

[1]Specifically, Plaintiffs cite the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code § 4111 *et seq.* ("the Ohio Wage Act"), the Ohio Prompt Pay Act ("OPPA"), and Ohio Rev. Code § 4113.15.

projects. These inspection service companies either employ or contract with inspectors, who render the contracted services to MarkWest. The inspection service companies then invoice MarkWest for the worked performed, and MarkWest pays the inspection service companies. Mr. Fischer asserts that MarkWest never personally pays the inspectors, nor does it dictate how individual inspectors are paid or determine how they are classified. *Id*. at ¶¶26, 27. Instead, "[t]o MarkWest's knowledge, the determination on exactly how to compensate or classify these workers is made by the inspection services companies." *Id*. at ¶28.

In his declaration, Mr. Fischer mentions several inspection service companies MarkWest uses. As relevant to the named Plaintiffs, Plaintiff Ison rendered services through Pittsburgh Mineral and Environmental Technology, Inc. (PMET), and Plaintiff Hamilton rendered services through Accent Compliance (Accent). *Id*. at ¶31. According to Mr. Fischer, MarkWest has never paid either Plaintiff, and it did not dictate, negotiate, or determine how they were paid or classified. Rather, it paid a set rate to PMET and Accent for the inspection services rendered by those companies.

To further support its position that it is not a proper defendant, MarkWest also submitted declarations from two other inspection service companies it uses. First, Jennifer Lacy, the Corporate Director of Human Resources for Applied Consultants, Inc., explains that Applied Consultants "employs a range of professional personnel that provide third-party inspection services to its customers," which includes MarkWest. *Decl. of Jennifer Lacy*, at ¶¶3, 4, ECF No. 26-2. Ms. Lacy compares the services Applied Consultants provides to its clients to that of a CPA firm and states its "inspectors' job is to provide independent verification and supervision of our

clients' employees and contractors just as an auditor would." *Id*. at ¶3. According to Ms. Lacy, "MarkWest paid Applied Consultants a stipulated rate to compensate it for the services that it provided; this rate was all-inclusive, covering overhead, profit, equipment, material, etc. Applied Consultants, in turn, pays it[s] personnel in the manner that it alone determined was warranted." *Id*. at ¶4.[2]

The other declaration MarkWest attached was from Andrew Dun, the President of Amerisafe Consulting and Safety Services, LLC (Amerisafe). In his declaration, Mr. Dun stated that Amerisafe "contracts with MarkWest to provide Site Safety Professionals (SSPs)[.]" *Decl. of Andrew Dun*, at ¶5, ECF No. 26-3. Mr. Dun further said that it determines how its SSPs are compensated, and SSPs are paid either on an hourly, with overtime, or on a salaried basis. *Id*. at ¶¶9-11. Amerisafe then submits invoices to MarkWest for its services, and MarkWest directly pays Amerisafe for the invoiced services.[3]

Although Plaintiffs make no mention of any inspection service companies in their Complaint, they argue in their Reply that it is premature to make any decision regarding the parties' employment relationship with MarkWest. Plaintiffs argue that the Court should not delve into the merits of their claims, and it should employ a fairly lenient standard and grant conditional

---

[2]Ms. Lacy maintains that of 134 inspectors assigned to MarkWest projects over the past three years, 102 were paid on an hourly basis, with overtime, and 32 were salaried, with salary guarantees that meet the FLSA requirements for overtime exempt status. *Id*. at ¶5. Additionally, Ms. Lacy states that all 134 inspectors have entered into one of two different arbitration agreements. *Id*. at ¶6.

[3]Similar to Applied Consultants, Mr. Dun asserts that many, and perhaps all, SSP's who were assigned to MarkWest projects have entered into arbitration agreements with Amerisafe. *Id*. at ¶13.

certification and notice. On the other hand, MarkWest argues the Court should adopt a more rigorous scrutiny standard and deny Plaintiffs' motion.

The FLSA permits private plaintiffs to bring a collective action on their own behalf and on behalf of those "similarly situated" for violations of the overtime provisions in the Act. 29 U.S.C. § 216(b) (providing, in part: "An action to recover the liability [under certain FLSA provisions] may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."); *see also* 29 U.S.C. § 207 (prescribing overtime compensation). However, the FLSA further provides for an "opt-in" scheme where "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b), in part. Thus, it sets up a system in which plaintiffs bringing a collective action ask the court to approve notice to "similarly situated" employees to make those employees aware of the litigation and give them the opportunity to join the action. In discussing notice, the United States Supreme Court has emphasized the importance of "employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Unfortunately, however, neither the United States Supreme Court nor the Fourth Circuit have ever announced a definitive test to determine whether to approve a motion for conditional certification and notice.

Despite the lack of such guidance, most courts employ the two-step approach fashioned in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D. N.J. 1987), to manage collective actions

under the FLSA. As the Honorable John T. Copenhaver, Jr. recently explained in *Lupardus v. Elk Energy Services, LLC*, Civ. Act. No. 2:19-cv-00529, 2020 WL 4342221 (S.D. W. Va. July 28, 2020), the first step of the process "involves conditional certification to give notice to potential class members early in the litigation, before much of the discovery." 2020 WL 4342221, at *2. For notice to issue, the plaintiffs must show that the potential "opt-ins" meet the "similarly situated" requirement. *Id*.

Although "similarly situated" is not defined in the statue, the courts of this district have stated that the first step requires "the plaintiffs make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id*. (internal quotation marks and citations omitted); *O'Quinn v. TransCanada USA Servs., Inc.*, 469 F. Supp. 3d 591, 604 (S.D. W. Va. 2020) ("In the first phase of this inquiry a court examines the pleadings and affidavits of the proposed action in search of a 'modest factual showing' that the proposed class is similarly situated." (internal quotation marks and citation omitted)). Whether or not to grant conditional certification and notice lies within the court's discretion. *Hoffmann-La Roche*, 493 U.S. at 169 ("[D]istrict courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs."). However, such discretion is not unfettered, and "'courts should not exercise their discretion to facilitate notice unless '"[t]he facts and the circumstances of the case illustrate' that a class of 'similarly situated' aggrieved employees exists.'" *Lupardus*, 2020 WL 4342221, at *3 (quoting *Purdham v. Fairfax Cty. Pub. Sch.*, 629 F. Supp.2d 544, 547-48 (E.D. Va. 2009) (quoting *Hoffman-La Roche*, 493 U.S. at 170)). If the plaintiffs make such a showing, the court will

conditionally certify the class so the notice can be sent to those who may want to join the action. *O'Quinn*, 460 F. Supp. 3d at 604. The action then proceeds to discovery.

Once discovery is largely complete, a defendant typically files a motion for decertification. *Lupardus*, 2020 WL 43221, at *2. The Court then undertakes the second step of the process and must determine whether those who opted in are—in fact—"similarly situated." *Id*. Only those who are similarly situated may be represented at trial, and those who are not are dismissed without prejudice. *O'Quinn*, 469 F. Supp.3d at 604.

In *O'Quinn*, the Honorable Joseph R. Goodwin applied this two-step approach to a situation comparable to the one at hand. In that case, it was alleged that the defendant TransCanada USA Services, Inc.'s (TransCanada) used an affiliate, TransCanada USA Operations Inc. (TransCanada Operations), to contract with Field Services Providers/Supplies to provide personnel to TransCanada for various projects. 469 F. Supp.3d at 599. The plaintiff, who worked as a Pipeline Inspector, argued that TransCanada misclassified the inspectors as independent contractors and violated the FLSA by paying them a set day rate with no overtime. By declaration, the plaintiff stated that TransCanada functionally treated inspectors as employees, with it setting and controlling their pay, arranging their schedules, and controlling their work, amongst other things. *Id*. at 599. The plaintiff also submitted the declarations of five other inspectors who stated their main responsibility was to ensure they adhered to the specifications and guidelines established by TransCanada and/or its clients. *Id*. at 600.Despite working an average of 60 hours a week, the inspectors said TransCanada paid a flat day rate without overtime. *Id*.

Upon motion of the plaintiff for conditional class certification and notice, the court applied the fairly lenient standard at stage one to determine whether the plaintiff made a modest factual showing that the proposed class members are "similarly situated." *Id*. at 604. In doing so, the court noted that "factual distinctions between putative class members, such as, (1) having different supervisors, (2) having different job duties, (3) working in facilities [at] distinct locations, and (4) difference [in] amount paid, are not fatal to a motion for conditional class certification in a[ ] FLSA action." *Id*. at 604-05 (citation omitted). As much is unknown at the early stage of the proceedings, the court "does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility." *Id*. at 605 (citation omitted). Instead, the court will look to see "whether the plaintiffs raise a similar legal issue as to coverage, exemption, or nonpayment or minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions, but their situations need not be identical." *Id*. (internal quotation marks and citations omitted). Based upon the declarations and payroll records submitted, the court found the plaintiff satisfied the requirement of making a modest factual showing that the inspectors were victims of a common policy or plan by TransCanada in violation of the FLSA. *Id*. at 605. Therefore, the court concluded the members of the putative class were similarly situated for purposes of conditional certification and notice. The court reserved the issue of whether or not the inspectors actually were employees or independent contractors until the second stage of the similarly situated inquiry. *Id*. at 608 (citation omitted).

Likewise, in *Hager v. Ominicare*, No. 5:19-00484, 2020 WL 5806627 (S.D. W. Va. Sept. 29, 2020), the Honorable Frank W. Volk applied the same two-step approach where the plaintiff brought a putative nationwide collective action alleging Omincare misclassified

employees as independent contractors and did not comply with the minimum wage and overtime provisions of the FLSA. 2020 WL 5806627, at *1. The plaintiff claimed that, although Omnicare had contracted with other companies to provide it delivery drivers, Omnicare directed and supervised her delivery work and she was an employee of Omnicare under "the economic reality of the arrangement." *Id*. at *7 (internal quotation marks and citation omitted). Despite Omnicare's assertion that the drivers' compensation depended on their agreements with the different courier companies and required an individualized analysis, the court declined to address these merit-based concerns at step one. *Id.* at *11. Therefore, upon finding the plaintiff had submitted sufficient evidence under step one that Omnicare engaged in a uniform misclassification scheme and FLSA violations,[4] the court granted the plaintiff's motion for conditional certification. *Id*. at **9, 12.

In this case, MarkWest argues this Court should abandon the lenient standard the other judges in this district have applied at step one and adopt the recent holding in *Swales v. KLLM Transport Services*, 985 F.3d 430 (5th Cir. 2021). In *Swales*, the Fifth Circuit rejected the *Lusardi* approach as an "abstract and ad-hoc balancing test with no fulcrum." *Swales*, 985 F.3d at 437 (internal quotation marks and citation omitted). The *Swales* court held that merely because "a threshold question is intertwined with a merits question does not itself justify deferring those questions until after notice is sent out." *Id*. at 441. A court should not simply ignore evidence relevant to threshold matters, such as "whether the plaintiffs are 'employees,'" to allow a FLSA claim to proceed. *Id*. Therefore, the Fifth Circuit concluded that "the FLSA's similarity

---

[4]In addition to her own declaration and the declaration an opt-in plaintiff, the plaintiff submitted copies of agreements between Omnicare and three courier companies in which Omnicare "retain[s] a significant level of control regarding critical terms and conditions of the delivery drivers' work." *Id*. at *9 (citation omitted). There also was evidence from Omnicare's website and a job posting referencing its delivery services. *Id*. at 10.

requirement is something that district courts should rigorously enforce at the outset of the litigation." *Id.* at 443.

Despite the lack of guidance from the Fourth Circuit, the Court finds no reason to depart from the two-step approach that has long been applied in this district. *Swales* essentially requires the Court to make a preliminary conclusion that Plaintiffs are not MarkWest employees before any discovery occurs. This Court declines to take this position. Instead, this Court will utilize the fairly lenient standard at stage one as applied by the other judges in this district. In doing so, the Court considers the pleadings and documents submitted by the parties to determine whether Plaintiffs have made the modest factual showing required at step one to show "they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Lupardus*, 2020 WL 4342221, at *2 (internal quotation marks and citation omitted)).

In their Complaint, Plaintiffs allege that they worked as inspectors for MarkWest and were paid a flat daily rate without overtime. *Compl.* at ¶¶3, 4. They further allege the inspectors who "worked for MarkWest on a day rate basis (without overtime pay) . . . . were all subjected to the same or similar illegal pay practice for similar inspection work." *Id.* at ¶¶36-39. As in *O'Quinn*, Plaintiffs have submitted declarations in support of these allegations, and they have submitted time sheets showing flat-rate payments regardless of overtime worked. The declarants state they only worked on MarkWest's job sites at locations assigned by MarkWest, MarkWest controlled their work, and MarkWest dictated the days and hours of their work. They all claim knowledge of wide-spread practices and policies at MarkWest sites in violation of the FLSA. Additionally, despite being staffed by different inspection services companies, they maintain that

their paychecks are dependent upon the invoices the inspection service companies send to MarkWest for payment. Plaintiffs also argue it is premature for the Court to determine whether a joint employment relationship exists. Upon review, the Court agrees and finds these declarations and the time sheets are sufficient to meet the low bar at the first step of *Lusardi* to show that MarkWest acted as an employer for the putative class members and it had a common policy or plan that violated the provisions of the FSLA. As many of MarkWest's arguments relate to whether the proposed class members are *actually* similarly situated, those determinations are best reserved until the second step of the process following discovery.[5]

MarkWest also argues that Plaintiffs have failed to demonstrate this Court has jurisdiction over work performed outside of West Virginia under the United States Supreme Court's holding in *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017) (holding personal jurisdiction must be established over each individual plaintiff who joined a mass tort action in state court.).[6] As explained in *Hager*, the majority of district courts have held that *Bristol-Meyers Squibb* is inapplicable to class actions brought under Rule 23 of the Federal Rules of Civil Procedure. 2020 WL 5806627, at *4. Additionally, *Hager* "note[d] that the only district courts within the Fourth Circuit to address this issue have declined to extend the holding in

---

[5]MarkWest asserts that not all the inspection service companies it used paid a daily rate and, therefore, the inspectors are not similarly situated. However, Plaintiffs' definition of the proposed class is restricted to those who were paid a daily rate. Thus, to the extent some inspectors were not paid a daily rate, those inspectors do not fall within the proposed class. MarkWest also claims that some of the proposed class members may be subject to arbitration agreements. However, MarkWest has not moved to enforce those agreements, and the Court does not have sufficient evidence at this point in the litigation to make any ruling about the enforceability of any of those agreements.

[6]The Supreme Court left "open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." 137 S. Ct. at 1784.

*Bristol-Meyers Squibb* to FLSA collective actions." *Id*. at *5 (citing *O'Quinn* and *Hunt v. Interactive Med. Specialists, Inc.*, No. 1:19CV13, 2019 WL 6528594, at *3 (N.D. W. Va. Dec. 4, 2019)).[7] Agreeing with these cases, *Hager* recognized the purpose of collective actions under the FLSA is to prevent piecemeal litigation and allow an efficient way for employees to pursue claims against an employer based on the same alleged unlawful conduct. *Id*. at *5. Extending *Bristol-Meyers Squibb* to FLSA collective actions would essentially eviscerate the Act's purpose. *Id*. Thus, *Hager* held that, so long as there is personal jurisdiction over the named plaintiff, a collective action under the FLSA may proceed. *Id*. at *7 (citations omitted). This Court agrees with this analysis and declines to extend *Bristol-Meyers Squibb* to this action. Thus, as Plaintiffs state that Mr. "Hamilton worked for MarkWest in West Virginia,"[8] the Court finds personal jurisdiction over a named Plaintiff is alleged, and the Court **DENIES** MarkWest's argument that the Court lacks jurisdiction over claims that arose outside of West Virginia.

Lastly, MarkWest filed a Motion for Oral Argument on Plaintiffs' Motion for Conditional Certification. The Court finds that oral argument on the motion is unnecessary and **DENIES** the motion **AS MOOT**. However, to the extent the parties disagree about the parameters of the actual Notice and how it should be delivered to the putative class members, the Court **DIRECTS** the parties to meet and confer and file a joint status report with the Court **on or before January 10, 2022**.

---

[7]In *O'Quinn*, the district court stated that *Bristol-Meyers Squibb* "does not apply to FLSA collective actions." 469 F. Supp.3d at 613. Likewise, *Hunt* held "does not extend to collective actions under the FLSA." 2019 WL 6528594, at *3 Both *O'Quinn* and *Hunt* cited with approval *Swamy v. Title Source, Inc.*, No. C 17-01175 WHA, 2017 WL 5196780, *2 (N.D. Cal. Nov. 10, 2017) (stating extending *Bristol-Meyers Squibb* to FLSA actions would contravene Congressional intent).

[8]*Compl.* at ¶10.

Accordingly, for the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice (ECF No. 20) and **DENIES AS MOOT** Defendant's Motion for Oral Argument on Plaintiff's Motion for Conditional Certification. ECF No. 31.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: December 17, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE